```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION
```

IN RE MENTOR CORP. OBTAPE          *    MDL Docket No. 2004
                                        4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS      *
                                        Case No.
LIABILITY LITIGATION               *    4:12-cv-175 (SHAW-WAKEMAN)

## O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Bernette Shaw-Wakeman was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Shaw-Wakeman brought this product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Shaw-Wakeman also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mentor contends that Shaw-Wakeman's claims are barred by the applicable statute of limitations. For the reasons set forth below, the Court agrees, and Mentor's Motion for Summary Judgment (ECF No. 45 in 4:12-cv-175) is granted. Shaw-Wakeman's request for oral argument is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Shaw-Wakeman, the record reveals the following.

Shaw-Wakeman has lived in Tennessee since 2007, although all of her medical treatment relevant to this action occurred in South Carolina. Shaw-Wakeman has suffered from a variety of ailments, including fibromyalgia, interstitial cystitis, irritable bowel syndrome, autonomic nervous disorder, and ovarian cysts. She has had multiple surgeries to treat these and other health issues. Shaw-Wakeman visited Dr. Allen Lucas after she experienced symptoms of stress urinary incontinence. Dr. Lucas recommended a bladder sling, and Dr. Nelson Ploch implanted Shaw-Wakeman with ObTape on April 23, 2004. After the surgery, Shaw-Wakeman had bladder discomfort and difficulty

2

urinating. Dr. Ploch did a surgical revision of the ObTape, but Shaw-Wakeman's symptoms did not improve. Shaw-Wakeman decided to "seek help elsewhere," so she visited Dr. Ross Rames in September 2004. Shaw-Wakeman Dep. 142:20-24, ECF No. 45-4. At that time, Dr. Rames did not see any erosion of the ObTape, and he diagnosed her with a shy bladder due to multiple catheteriztaions.

In April 2005, Shaw-Wakeman reported to Dr. Rames that her husband felt something sharp and uncomfortable in her vagina during intercourse. She was also experiencing drainage and discharge. *Id.* at 162:16-19. Dr. Rames found that part of Shaw-Wakeman's ObTape had eroded and was exposed, and he concluded that the exposed ObTape was the source of the pain Shaw-Wakeman's husband experienced during intercourse. Rames Dep. 54:5-8, 114:15-115:5, ECF No. 45-6. Dr. Rames told Shaw-Wakeman that the ObTape was exposed and needed to be removed. Shaw-Wakeman Dep. 162:2-15. On April 19, 2005, Dr. Rames removed the center portion of Shaw-Wakeman's ObTape; two pieces of ObTape remained in Shaw-Wakeman's body. After the excision surgery, Shaw-Wakeman's problem with urinary retention improved, although she continued to experience abdominal pain. After her follow-up appointment with Dr. Rames in June 2005, Shaw-Wakeman decided to try an herbal regimen for all of her symptoms and did not see Dr. Rames again. *Id.* at 169:6-170:10.

It is undisputed that Dr. Rames did not tell Shaw-Wakeman that ObTape might be defective. Shaw-Wakeman contends that she did not suspect that her problems were attributable to a defect in ObTape until she saw an advertisement regarding problems with mesh slings in 2011. Shaw-Wakeman filed her Complaint on July 12, 2012. *See generally* Compl., ECF No. 1 in 4:12-cv-175. She brought claims for personal injury under a variety of theories, including strict liability design defect, strict liability failure to warn, strict liability manufacturing defect, and negligence.

## DISCUSSION

Shaw-Wakeman filed her action in this Court under the Court's direct filing order. The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint." Stipulation & Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004. Shaw-Wakeman and Mentor agree that Tennessee law, including its statutes of limitation, apply to Shaw-Wakeman's claims even though her relevant medical treatment occurred in South Carolina. *See Elec. Power Bd. of Chattanooga v. Monsanto Co.*, 879 F.2d 1368, 1375 (6th Cir. 1989) (noting that "the procedural law of the forum state applies, including its statutes of limitations" and finding that Tennessee's statutes of

4

limitations applied because that is where the plaintiffs filed suit).

The parties agree that Shaw-Wakeman's claims are subject to Tennessee's one-year statute of limitations. Tenn. Code Ann. § 28-3-104(a)(1)(A) (2015); Tenn. Code Ann. § 29-28-103(a). They dispute, however, when Shaw-Wakeman's claims accrued under Tennessee's discovery rule. Under Tennessee's discovery rule, a tort cause of action "does not exist until a judicial remedy is available to the plaintiff." *Gilmore v. Davis*, 185 F. App'x 476, 481 (6th Cir. 2006) (per curiam) (applying Tennessee law). "There is no judicial remedy available to a plaintiff until she has 'discovered, or reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced his injury; and (2) the identity of the defendant who breached the duty.'" *Id.* (quoting *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982)). In other words, "a cause of action accrues not because of knowledge of facts, but because of knowledge of the elements that make a lawsuit possible," so for a claim to accrue a plaintiff must have "discovered her claim, not merely the facts surrounding it— chiefly, the manner and means of the breach and the identities of the defendants." *Id.* at 483.

Although a plaintiff's claim generally does not accrue until she discovers sufficient facts to put her on notice that

5

she may have an actionable claim, Tennessee law imposes a duty on a plaintiff to exercise reasonable care and diligence to discover the cause of action; if she does not do so, her claims are barred. *Webber v. Union Carbide Corp.*, 653 S.W.2d 409, 411 (Tenn. Ct. App. 1983) (finding that plaintiff's claims were time-barred because he did not exercise reasonable diligence to discover that a product ingredient may have been responsible for his illness). In *Webber*, for example, the plaintiff suspected a causal relationship between his illness and products he worked with, and he pursued claims against the manufacturers of the finished products. *Id.* He did not, however, make any inquiry regarding the manufacturers of the product *ingredients* at that time. The finished products contained styrene, and the plaintiff later tried to pursue claims against the styrene manufacturer. *Id.* The Tennessee Court of Appeals found that the plaintiff reasonably could have undertaken an investigation to discover that he might have a cause of action against the styrene manufacturer years before he did; because he did not, his claims against the styrene manufacturer were time-barred. *Id.* at 411-12; *cf. Gilbert v. Jones*, 523 S.W.2d 211, 213 (Tenn. Ct. App. 1974) (finding that product liability cause of action arose when plaintiff first became aware of a potential connection between her high blood pressure and her contraceptive pills).

Here, Shaw-Wakeman contends that she had no reason to inquire about a potential problem with ObTape until 2011, "but the record and common sense suggest otherwise." *Webber*, 653 S.W.2d at 411. Shaw-Wakeman knew or should have suspected by mid-2005 that ObTape was the likely cause of at least two of her injuries: pain during intercourse and urinary retention. Her doctor's excision of the ObTape was certainly a clue that her problems were related to the ObTape, and when both problems cleared up after the portion of ObTape was removed, Shaw-Wakeman certainly should have suspected a causal relationship. At that point, Shaw-Wakeman had a duty under Tennessee law to investigate the potential causal connection between ObTape and her injuries to find out whether her problems were caused by a defect in ObTape, improper implantation of the ObTape, or something else. She did not. Instead, she stopped seeking medical treatment from Dr. Rames and began an herbal regimen. Shaw-Wakeman presented no evidence that she took any steps to discover whether a defect in the ObTape caused her problems, and she pointed to no evidence to suggest that she could not have made the connection before the statute of limitations expired had she exercised reasonable diligence.

Shaw-Wakeman relies on *Foster v. Harris*, 633 S.W.2d 304, 304 (Tenn. 1982). In *Foster*, the plaintiff's dentist lacerated his finger and the plaintiff's lip while performing dental work

7

on the plaintiff, and their blood intermingled.  A short time later, the plaintiff was diagnosed with serum hepatitis.  The plaintiff and his physicians tried to find out how the plaintiff contracted serum hepatitis, but their search was fruitless until the plaintiff went back to his dentist and found out that the dentist had serum hepatitis.  The dentist argued that the plaintiff's cause of action accrued when he discovered that he had serum hepatitis; the trial court and the Tennessee Court of Appeals agreed.  The Tennessee Supreme Court reversed because the plaintiff did not learn that he contracted serum hepatitis "through a negligent act or who the tort feasor might be" until he found out that his dentist had the disease.  *Id.* at 305.

In a similar case, *Terry v. Niblack*, 979 S.W.2d 583, 583 (Tenn. 1998), the plaintiff sued a laboratory for negligently performing an inaccurate paternity blood test.  When the results of the laboratory's blood test suggested that the father of the plaintiff's child was not actually the father, the plaintiff demanded a second blood test.  The second blood test confirmed "that there was a 99.5 percent probability that" the man the plaintiff believed to be the father of her child actually was the father of her child.  *Id.* at 587.  The Tennessee Supreme Court found that the statute of limitations did not begin to run until the plaintiff got the results of the second blood test and

8

thus had enough information to suspect that the first test had been negligently performed.

Both *Foster* and *Terry* are distinguishable. The *Foster* court noted that the plaintiff in that case diligently searched for the source of his serum hepatitis. Even with that diligent investigation, the plaintiff could not have known about a potential connection between his injuries and his dentist until he found out that the dentist had serum hepatitis. And in *Terry*, the plaintiff did not have reason to suspect that the first blood test had been negligently performed until after she demanded a second blood test and got the results. But here, Shaw-Wakeman was on notice of a potential connection between her injuries and ObTape by mid-2005. Thus, she "had sufficient knowledge, or should have had sufficient knowledge, that [s]he could have a cause of action against" Mentor by mid-2005. *Webber*, 653 S.W.2d at 411-12. She did not conduct any investigation to determine whether a defect in ObTape caused her injuries until at least six years later. Because Shaw-Wakeman did not exercise reasonable care and diligence to discover her cause of action, her claims are time-barred under Tennessee law.

## CONCLUSION

For the reasons set forth above, Mentor's Motion for Summary Judgment (ECF No. 45 in 4:12-cv-175) is granted.

9

IT IS SO ORDERED, this 10th day of August, 2015.

                                        S/Clay D. Land
                                        CLAY D. LAND
                                        CHIEF U.S. DISTRICT COURT JUDGE
                                        MIDDLE DISTRICT OF GEORGIA